UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

TAHJA WILLIAMS,

         Plaintiff,                    CASE NO.:

        v.                        JURY TRIAL DEMANDED

LAKE PARKER SNF
OPERATIONS LLC *d/b/a*
CHARMING LAKES REHAB,

         Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, TAHJA WILLIAMS (hereinafter referred to as "Plaintiff" or "Ms. Williams"), by and through her undersigned counsel, hereby files this lawsuit against Defendant, LAKE PARKER SNF OPERATIONS LLC d/b/a CHARMING LAKES REHAB (hereinafter referred to as "Defendant" or "CLR"), and alleges as follows:

## INTRODUCTION

1. This is an action for damages and equitable relief under the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg et seq.; Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 (the

"ADA"), 42 U.S.C. § 12101 et seq.; and the Florida Civil Rights Act of 1992 (the "FCRA"), Fla. Stat. § 760.01 et seq.

2.      Plaintiff Tahja Williams worked for Defendant as a full-time night-shift certified nursing assistant ("CNA") at Defendant's skilled nursing facility in Lakeland, Florida. In the spring of 2025, Ms. Williams was pregnant, with an estimated due date in December 2025.

3.      Beginning on or about April 23, 2025, Ms. Williams began experiencing severe pregnancy-related nausea and vomiting that prevented her from working her scheduled overnight shifts.

4.      Ms. Williams promptly told Defendant. Before each affected shift, she called Defendant's designated on-call staffing line and reported the absence, and Defendant's own timekeeping records code each of those reported absences as a "Call Off." She told Defendant's on-call supervisor that her absences were due to her pregnancy and pregnancy-related sickness, she put her request for a reduction to part-time or PRN status in writing directly to Defendant's facility Administrator, and she asked not to be scheduled until her already-scheduled obstetric appointment on May 7, 2025.

5.      Defendant's Administrator viewed Ms. Williams's written accommodation request on the morning of April 29, 2025. Defendant terminated Ms. Williams' employment effective the very next day, April 30,

2

2025, designated her "DO NOT REHIRE," and at no point engaged in any interactive process or offered her any accommodation of any kind.

6.     Defendant did not tell Ms. Williams she had been fired. On May 7, 2025, Ms. Williams attended her obstetric appointment and delivered to Defendant, by text message and by email to Defendant's Human Resources Administrator, a note from her medical provider documenting her pregnancy-related nausea and vomiting and asking that she be excused from work through May 12, 2025 while her symptoms were brought under control with medication. The next morning, Defendant responded by telling Ms. Williams, for the first time, that she had been terminated.

7.     Defendant later represented to the United States Equal Employment Opportunity Commission ("EEOC") that Ms. Williams "did not notify" it of her pregnancy or any alleged pregnancy-related illness until after her employment was terminated, and that May 7, 2025 was "the first time" it learned Ms. Williams was pregnant. Defendant's own records and admissions refute those representations: Defendant's timekeeping records document Ms. Williams' pre-shift call-offs on April 23, 24, and 26, 2025, and Defendant's position statement concedes that Ms. Williams was in contact with Defendant as late as April 26, 2025.

8. Ms. Williams brings this action to recover back pay and lost benefits, compensatory damages, punitive damages, equitable relief, attorneys' fees, and costs.

## PARTIES

9. Plaintiff Tahja Williams is a natural person and a resident of Polk County, Florida. At all times material, Ms. Williams was an "employee" of Defendant within the meaning of Title VII, 42 U.S.C. § 2000e(f); the PWFA, 42 U.S.C. § 2000gg(3); the ADA, 42 U.S.C. § 12111(4); and the FCRA, Fla. Stat. § 760.02.

10. Defendant Lake Parker SNF Operations LLC is a foreign limited liability company with its principal place of business at 1487 McDonald Avenue, Brooklyn, New York 11230. Defendant is registered to do business in Florida and owns and operates a skilled nursing facility doing business as "Charming Lakes Rehab," also known as "Charming Lakes Rehabilitation & Care Center," located at 2020 W. Lake Parker Drive, Lakeland, Florida 33805 (the "Facility").

11. At all times material, Defendant employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. Upon information and belief, Defendant employed more than two hundred (200) employees at the Facility during the relevant period.

4

12.    At all times material, Defendant was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and the FCRA, Fla. Stat. § 760.02(7); a "covered entity" within the meaning of the PWFA, 42 U.S.C. § 2000gg(2); and a "covered entity" and "employer" within the meaning of the ADA, 42 U.S.C. § 12111(2) and (5).

13.    Upon information and belief, Defendant operates as part of an integrated enterprise and single employer with affiliated entities, including Lake Parker SNF Operations Holdings LLC (Defendant's direct parent), The Sunshine SNF Group LLC, and the affiliated management organization known as Excelsior Care Group, which is affiliated with approximately thirty-three (33) skilled nursing facilities in Florida, New Jersey, and New York. The entities share common ownership and common indirect owners, common management, centralized control of labor relations and human resources functions, and interrelated operations.

14.    Upon information and belief, the integrated enterprise of which Defendant is a part collectively employed more than five hundred (500) employees in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and the employees of the affiliated entities are properly aggregated with Defendant's employees for purposes of statutory coverage and the compensatory and punitive damages limitations of 42 U.S.C. § 1981a(b)(3).

5

## JURISDICTION AND VENUE

15.    This Court has original subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff's PWFA claims are enforced through the powers, remedies, and procedures of Title VII pursuant to 42 U.S.C. § 2000gg-2(a)(1). Plaintiff's ADA claims are enforced pursuant to 42 U.S.C. § 12117.

16.    This Court has supplemental jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative fact as Plaintiff's federal claims and form part of the same case or controversy.

17.    Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3). The unlawful employment practices alleged herein were committed in Polk County, Florida, within the Tampa Division of the Middle District of Florida; the employment records relevant to those practices are maintained and administered at Defendant's Lakeland, Florida facility; and Plaintiff would have continued to work at that facility but for the unlawful conduct alleged herein.

## ADMINISTRATIVE PREREQUISITES

18.    On November 4, 2025, Plaintiff, through counsel, timely filed a verified Charge of Discrimination with the EEOC, designated Charge No. 511-2026-00396 (the "Charge"), within three hundred (300) days of the unlawful

employment practices alleged herein. The Charge alleged discrimination on the basis of sex, pregnancy, and disability, as well as retaliation, and identified the PWFA, Title VII, the ADA, and the FCRA.

19. The Charge was dual-filed with the Florida Commission on Human Relations ("FCHR") pursuant to the worksharing agreement between the EEOC and the FCHR and pursuant to Plaintiff's express request that the Charge be dual-filed.

20. On July 6, 2026, the EEOC issued Plaintiff a Notice of Right to Sue with respect to the Charge. This action is commenced within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

21. More than one hundred eighty (180) days have elapsed since the Charge was dual-filed with the FCHR, and the FCHR has not issued a determination on the Charge. Plaintiff has accordingly satisfied all administrative prerequisites to suit under the FCRA, Fla. Stat. § 760.11.

22. All conditions precedent to the institution and maintenance of this action have been performed, have occurred, or have been waived.

## FACTUAL ALLEGATIONS

23. Defendant hired Ms. Williams on October 14, 2024 as a full-time CNA at the Facility. Ms. Williams was assigned to the overnight nursing shift, working 11:00 P.M. to 7:00 A.M.

24. As a CNA, Ms. Williams' duties included providing basic patient care, assisting residents with activities of daily living such as bathing, dressing, and eating, taking vital signs, and reporting resident concerns to the registered nurses on duty.

25. Defendant paid Ms. Williams a base rate of $19.00 per hour, plus a $1.00 per hour shift differential for weekday overnight shifts and a $2.00 per hour shift differential for weekend overnight shifts.

26. On October 31, 2024, during her ninety-day introductory period, Ms. Williams called off from an evening shift. On November 1, 2024, Defendant issued Ms. Williams a written warning styled a "First Written Warning" for that call-off. That warning was the only discipline of any kind that Defendant ever issued to Ms. Williams during her employment.

27. Apart from the attendance notations described in this Complaint, Defendant never criticized, counseled, or disciplined Ms. Williams' job performance in any respect.

28. Defendant's records reflect single-day call-offs by Ms. Williams on December 23, 2024 and March 6, 2025. From February 2 through February 17, 2025, Ms. Williams took a period of time off without pay that Defendant approved in advance.

29. Defendant maintained a written Attendance and Punctuality policy in its employee handbook. Among other things, that policy: (a) required

an employee who is unable to report for work to personally notify the immediate supervisor as soon as possible, but in all cases at least two (2) hours before the start of the shift; (b) defined an "absence" as the failure to work one or more scheduled shifts, and provided that an employee is considered absent only if the employee works less than one-half of the scheduled shift; (c) reserved to Defendant the right to require medical certification or other documentation to substantiate the reason for an absence; and (d) established a progressive discipline schedule under which, after the introductory period, three (3) absences or tardies in a rolling twelve-month period result in a First Written Warning, six (6) result in a Second Written Warning, nine (9) result in a Final Written Warning, and twelve (12) result in termination of employment.

30.　At all times through the end of her employment, Ms. Williams received only the single First Written Warning issued on November 1, 2024. Defendant never issued Ms. Williams a Second Written Warning or a Final Written Warning. Even crediting every absence she ever had as unexcused, Ms. Williams had at most ten (10) countable absences in her entire employment, below the twelve-absence threshold at which Defendant's written policy provides for termination.

31.　In early 2025, Ms. Williams learned that she was pregnant, with an estimated due date in December 2025.

9

32.   Beginning on or about April 23, 2025, Ms. Williams began experiencing severe nausea and vomiting related to and arising out of her pregnancy. Her symptoms were severe enough to prevent her from working her scheduled overnight shifts and ultimately required medical evaluation and prescription medication to control.

33.   Severe pregnancy-related nausea and vomiting is a physical condition related to, affected by, and arising out of pregnancy within the meaning of the PWFA, 42 U.S.C. § 2000gg(4), and its implementing regulation. The EEOC's regulation implementing the PWFA expressly identifies "nausea or vomiting" and "hyperemesis gravidarum" among the conditions related to pregnancy for which reasonable accommodation is available. 29 C.F.R. § 1636.3(b).

34.   Ms. Williams' pregnancy-related nausea and vomiting also constituted a physical impairment that substantially limited one or more of her major life activities, including eating, sleeping, working, and the operation of major bodily functions including her digestive and gastrointestinal functions, within the meaning of the ADA, 42 U.S.C. § 12102, as construed broadly under the ADA Amendments Act of 2008, and a "handicap" within the meaning of the FCRA.

10

35.    Defendant maintained a designated on-call staffing telephone line for employees to report absences and communicate scheduling matters, and Defendant instructed CNAs, including Ms. Williams, to use that line.

36.    On April 23, 2025 at approximately 8:01 P.M., more than two and one-half hours before her 10:45 P.M. report time, Ms. Williams called Defendant's on-call staffing line and called off her shift, in compliance with Defendant's two-hour notification policy.

37.    On April 24, 2025 at approximately 6:52 P.M., nearly four hours before her report time, Ms. Williams again called Defendant's on-call staffing line and called off her shift, again in compliance with Defendant's policy. Defendant's own timekeeping records code the April 23 and April 24, 2025 absences as "Call Off."

38.    Also on April 24, 2025, Ms. Williams sent a written message to Defendant's facility Administrator, Amy Caudill, through the messaging platform Defendant's staff used for scheduling communications. Ms. Williams wrote: "Hey I would like to drop down to part-time. If I could keep the same schedule and drop Mondays. Or if you're offering PRN I would like to go PRN." Read together with her calls to Defendant's designated on-call line, this written message formed part of Ms. Williams' request for accommodation of her pregnancy-related sickness.

39.    On April 26, 2025 at approximately 6:51 P.M., nearly four hours before her report time, Ms. Williams called Defendant's on-call staffing line a third time. During that call, Ms. Williams informed Defendant's on-call supervisor that, due to the severity of her pregnancy-related sickness, she would be unable to return to work until her already-scheduled obstetric appointment on May 7, 2025, and she requested that she not be scheduled for shifts until that time. Defendant's on-call supervisor told Ms. Williams that this would not be a problem so long as she provided a doctor's note excusing her absences. Ms. Williams memorialized that call, including the doctor's-note condition, in her May 8, 2025 email to Defendant's Human Resources Administrator. Upon information and belief, Defendant arranged coverage for the shifts Ms. Williams would miss, confirming both that Defendant received her communications and that accommodating her short absence imposed no hardship.

40.    Based on her April 26, 2025 communication and Defendant's response, Ms. Williams reasonably understood that she was not expected at work, and would not be scheduled, before her May 7, 2025 medical appointment and that providing a doctor's note after her May 7, 2025 appointment would excuse the absences.

41.    Ms. Williams' communications identified a known limitation related to, affected by, and arising out of pregnancy and requested changes at

work due to that limitation. Under the PWFA and its implementing regulation, no specific words, format, or form were required. 29 C.F.R. § 1636.3(d), (h)(2). A limitation is communicated to the employer when it is raised with a supervisor, a manager, a person with supervisory authority over the employee or who regularly directs her tasks, or human resources personnel. 29 C.F.R. § 1636.3(d). Taken together, Ms. Williams' April 2025 communications informed Defendant of her pregnancy-related limitation and of the changes she sought because of it.

42.    Notwithstanding Ms. Williams' April 26, 2025 notice, Defendant internally recorded Ms. Williams as "No Call/No Show" for shifts on April 27, April 28, and April 30, 2025.

43.    Defendant claims that on April 28, 2025 and April 29, 2025 it called Ms. Williams and left her voicemails regarding her absences. The telephone number Defendant had on file for Ms. Williams, however, was not in service, a fact Defendant's own Human Resources Administrator confirmed in writing on May 8, 2025, when she asked Ms. Williams to provide "a working number" because the number Defendant had been calling was "not in service." Ms. Williams never received any call or voicemail from Defendant before May 8, 2025.

44.    On April 29, 2025, the same day Defendant claims it called Ms. Williams and left her a voicemail, Administrator Caudill viewed Ms. Williams'

13

April 24, 2025 written accommodation request for the first time. The messaging platform recorded the message as "Seen" by Ms. Caudill on April 29 at 10:44 A.M.

45. Defendant terminated Ms. Williams' employment effective April 30, 2025, one day after Administrator Caudill viewed Ms. Williams' written accommodation request. Defendant's internal Termination Form, prepared May 1, 2025 and signed by Administrator Caudill, states the termination date as April 30, 2025, states the reason for termination as "NC NS. CALLED MULTIPLE TIMES, NO ANSWER & NO CALL BACK," and directs "DO NOT REHIRE." Defendant's internal log of 2025 terminations likewise records Ms. Williams' termination date as April 30, 2025.

46. When Defendant terminated Ms. Williams for supposedly being unreachable, Defendant was not, in fact, unable to reach her. Administrator Caudill had viewed Ms. Williams' message at 10:44 A.M. on April 29, 2025, on the same messaging platform Defendant's staff used to communicate schedules, and that channel remained available to Defendant. Defendant did not reply to Ms. Williams' message, did not use the platform to ask whether she was returning to work, and did not use it to warn her that her employment was in jeopardy. Instead, Defendant terminated her effective the following day for "NC NS. CALLED MULTIPLE TIMES, NO ANSWER & NO CALL BACK."

14

47.    Defendant did not notify Ms. Williams of her termination on April 30, May 1, or at any time before May 8, 2025.

48.    At no time before terminating Ms. Williams did Defendant: (a) respond to her April 24, 2025 request for part-time or PRN status; (b) request medical certification or any other documentation of her condition, as Defendant's own policy permitted it to do; (c) initiate any discussion with Ms. Williams concerning her limitation or possible accommodations; or (d) offer Ms. Williams any accommodation of any kind, including a modified schedule, part-time or PRN status, unpaid leave, or a brief excused absence.

49.    On May 7, 2025, Ms. Williams attended her scheduled appointment with her obstetric provider. Her provider issued a note on Lakeland Regional Health letterhead stating that Ms. Williams was seen on May 7, 2025 for pregnancy and requesting excusal from work as they attempted to get her pregnancy-related symptoms under control with medication. The note was the very documentation Defendant's on-call supervisor had told Ms. Williams would excuse her absences.

50.    On May 7, 2025 at approximately 4:50 P.M., Ms. Williams sent Defendant a text message transmitting her provider's note and explaining that the days she had called out and missed work were related to her pregnancy and pregnancy-related sickness. Defendant received that text message and later produced its own screenshot of it to the EEOC.

51. On May 7, 2025 at approximately 8:12 P.M., Ms. Williams also emailed Defendant's Human Resources Administrator, Schelma Whitcomb, with the subject line "Missed days due to pregnancy related sickness," attaching her provider's note and explaining that she had been sick due to pregnancy-related sickness.

52. On the morning of May 8, 2025, Ms. Whitcomb replied to Ms. Williams' email requesting a current telephone number, evidencing that she did not have a current telephone number for her. Ms. Williams promptly provided it. Ms. Whitcomb then called Ms. Williams and informed her, for the first time, that her employment had been terminated for failing to report to work without notifying her supervisor.

53. Between May 8 and May 9, 2025, Ms. Williams appealed her termination to Ms. Whitcomb. Ms. Williams explained that she had personally notified Defendant's on-call supervisor before each absence, that her absences were caused by her pregnancy-related sickness, and that she was beginning a new medication that was expected to bring her symptoms under control so that she could return to work by May 12, 2025. Defendant refused to reconsider or rescind the termination.

54. Defendant's "DO NOT REHIRE" designation forecloses Ms. Williams from future employment not only at the Facility but, upon

16

information and belief, throughout the network of affiliated skilled nursing facilities described above.

55.    On March 23, 2026, in response to the Charge of Discrimination, Defendant submitted a position statement to the EEOC through counsel. In it, Defendant represented that Ms. Williams "did not notify CLR of her pregnancy or any alleged pregnancy-related illness until after her employment was terminated," and that May 7, 2025 "was the first time CLR became aware Charging Party was pregnant."

56.    Those representations are contradicted by Defendant's own records and by the events described above, including Defendant's own timekeeping entries coding Ms. Williams' April 23, April 24, and April 26, 2025 absences as "Call Off," her April 24, 2025 written request to Administrator Caudill, which Ms. Caudill viewed on April 29, 2025 before the termination took effect, and her April 26, 2025 call disclosing that her absences were due to her pregnancy-related sickness and requesting that she not be scheduled until her May 7, 2025 obstetric appointment.

57.    Defendant's position statement also asserted that Ms. Williams was terminated on May 1, 2025. Defendant's own Termination Form and its own termination log record the termination date as April 30, 2025. Defendant's position statement likewise misstated the date of Ms. Williams' provider's note, describing it as dated May 5, 2025, when the note is dated May 7, 2025.

17

58.    Defendant terminated Ms. Williams outside its own written progressive discipline schedule. Under that schedule, termination follows twelve (12) absences and is preceded by Second and Final Written Warnings. Ms. Williams had at most ten (10) countable absences and had received only a First Written Warning. Defendant skipped its own required intermediate steps and proceeded directly to termination, and did so only after Ms. Williams disclosed her pregnancy and requested accommodation.

59.    Defendant's employee handbook provides that Defendant's rules and procedures may be changed, modified, or deleted only with the written approval of Defendant's Human Resources Department. Upon information and belief, no written approval authorized any deviation from Defendant's progressive discipline schedule as applied to Ms. Williams.

60.    Defendant applied its attendance policy to Ms. Williams selectively and inconsistently: it never enforced its punctuality rules against her while she was working, and it never required medical certification for any absence as its policy permitted, but it invoked attendance as the basis to discharge her one day after its Administrator viewed her pregnancy accommodation request.

61.    Upon information and belief, Defendant has excused absences, accepted medical documentation, adjusted schedules, and otherwise accommodated non-pregnant employees whose medical conditions temporarily affected their ability to work their scheduled shifts, while denying Ms.

Williams, who was similar to such employees in her ability or inability to work, the same treatment.

62.　The timing, sequence, and content of Defendant's conduct, including the one-day interval between Administrator Caudill's viewing of Ms. Williams' accommodation request and the effective date of her termination, Defendant's misstatements to the EEOC regarding when it learned of her pregnancy, the internal inconsistencies in Defendant's own attendance records, Defendant's departure from its own progressive discipline policy, and Defendant's refusal to consider Ms. Williams' medical documentation when she supplied it, together evidence that Defendant's stated reason for the termination is a pretext for discrimination and retaliation on the basis of pregnancy, sex, and disability.

63.　As a direct and proximate result of Defendant's conduct, Ms. Williams lost her wages, shift differentials, and the benefits and privileges of her employment, and she was deprived of income during her pregnancy.

64.　Had Defendant not terminated her, Ms. Williams would have reached twelve (12) months of service in October 2025 and, upon information and belief, would have become eligible for job-protected leave under the Family and Medical Leave Act before her December 2025 due date. Defendant's termination stripped her of that prospective protection.

19

65.    Ms. Williams diligently mitigated her damages, applying for comparable employment within days of learning of her termination.

66.    As a further direct and proximate result of Defendant's conduct, Ms. Williams has suffered and continues to suffer emotional pain and mental anguish, humiliation, embarrassment, anxiety, loss of enjoyment of life, and other non-pecuniary harm, all of which was aggravated by the fact that Defendant discharged her while she was pregnant and ill.

67.    Defendant's conduct was undertaken with malice or with reckless indifference to Ms. Williams' federally protected rights. The decision-makers, including Defendant's facility Administrator and Human Resources Administrator, were managerial agents of Defendant acting within the scope of their employment, and Defendant ratified their conduct. Defendant acted in the face of clear statutory obligations under the PWFA, which took effect June 27, 2023, and the EEOC's implementing regulation, which took effect June 18, 2024, well before the events at issue.

68.    Ms. Williams has retained the undersigned counsel to represent her in this action and has agreed to pay counsel a reasonable fee for their services.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 2000gg-1(1)
### Pregnant Workers Fairness Act – Failure to Accommodate

69.    Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

70.    At all times material, Defendant was a "covered entity" under the PWFA, 42 U.S.C. § 2000gg(2).

71.    At all times material, Ms. Williams was a "qualified employee" under the PWFA, 42 U.S.C. § 2000gg(6). She could perform the essential functions of her CNA position with a reasonable accommodation, including a modified or part-time schedule or a brief period of leave. In the alternative, any inability to perform one or more essential functions was temporary, the essential functions could be performed in the near future, and the inability could be reasonably accommodated. Because Ms. Williams was pregnant with a December 2025 due date, her condition carried an ascertainable end date well within the period recognized by the EEOC's implementing regulation, 29 C.F.R. § 1636.3(f).

72.    Ms. Williams had a known limitation within the meaning of 42 U.S.C. § 2000gg(4): severe nausea and vomiting related to, affected by, and arising out of her pregnancy, which she communicated to Defendant through Defendant's on-call supervisor no later than April 26, 2025, and in writing,

21

with medical documentation, to Defendant's Human Resources Administrator on May 7, 2025.

73.    Ms. Williams requested reasonable accommodations for her known limitation, including a reduction to part-time or PRN status, a schedule keeping her existing shifts but dropping Mondays, not being scheduled for the brief period before her May 7, 2025 obstetric appointment, and, on May 7, 2025, a medically documented excusal through May 12, 2025 while her symptoms were controlled with medication. Each of these is among the accommodations expressly recognized by the EEOC's implementing regulation, including part-time or modified work schedules and leave to attend health care appointments or to recover. 29 C.F.R. § 1636.3(i).

74.    Defendant never granted any request, never denied any request on hardship grounds, never proposed any alternative, and never responded at all. Instead, Defendant terminated her employment effective April 30, 2025, one day after Administrator Caudill viewed her written request.

75.    Providing the requested accommodations would not have imposed an undue hardship on the operation of Defendant's business. Defendant staffs the Facility with part-time and PRN CNAs in the ordinary course, and, upon information and belief, Defendant covered the shifts at issue.

76.    Defendant additionally failed to engage in any interactive process with Ms. Williams concerning her known limitation or possible

accommodations. *See* 29 C.F.R. § 1636.4(a); 29 C.F.R. § 1636.3(k) (defining the interactive process). Defendant cannot establish any good faith effort, in consultation with Ms. Williams, to identify and make a reasonable accommodation, within the meaning of 42 U.S.C. § 2000gg-2(g).

77. By the conduct described above, Defendant violated 42 U.S.C. § 2000gg-1(1).

78. As a direct and proximate result of Defendant's violation, Ms. Williams has suffered and continues to suffer damages, including lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

79. Defendant acted with malice or reckless indifference to Ms. Williams' federally protected rights, entitling her to punitive damages.

80. Ms. Williams is entitled to recover her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 2000gg-2(a)(1), which incorporates the remedies and procedures of 42 U.S.C. § 2000e-5(k).

<u>**COUNT II**</u>
**42 U.S.C. § 2000gg-1(3)**
**Pregnant Workers Fairness Act – Denial of Employment Opportunities**

81. Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

23

82. Ms. Williams was a qualified employee under 42 U.S.C. § 2000gg(6) with a known limitation, severe pregnancy-related nausea and vomiting, which she communicated to Defendant no later than April 26, 2025, and again, with medical documentation, on May 7, 2025.

83. Her known limitation required reasonable accommodation in the form of a part-time or PRN schedule, a brief unscheduled period, or a short documented leave ending May 12, 2025.

84. Defendant denied Ms. Williams employment opportunities: it ended her employment effective April 30, 2025; it removed her from scheduling for the overnight CNA shifts she had worked since October 2024; and, through the "DO NOT REHIRE" directive on its May 1, 2025 Termination Form, it barred her from future employment with Defendant and, upon information and belief, throughout Defendant's affiliated network of facilities.

85. Those denials were based on Defendant's need to make reasonable accommodations to her known limitation. The termination took effect one day after Administrator Caudill viewed her April 24 accommodation request, and the stated reason, "NC NS. CALLED MULTIPLE TIMES, NO ANSWER & NO CALL BACK.", targeted the very absences her requested accommodations addressed, at a time when Defendant had already covered the affected shifts.

86. By this conduct, Defendant violated 42 U.S.C. § 2000gg-1(3).

24

87.    As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

88.    Defendant acted with malice or reckless indifference to Ms. Williams' federally protected rights, entitling her to punitive damages.

89.    Ms. Williams is entitled to recover her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 2000gg-2(a)(1), which incorporates the remedies and procedures of 42 U.S.C. § 2000e-5(k).

## COUNT III
### 42 U.S.C. § 2000gg-1(5)
### Pregnant Workers Fairness Act – Adverse Action on Account of a Request for Reasonable Accommodation

90.    Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

91.    Ms. Williams was a qualified employee under 42 U.S.C. § 2000gg(6) with a known limitation, severe pregnancy-related nausea and vomiting.

92.    Ms. Williams requested reasonable accommodation on April 24, 2025 (in writing to Administrator Caudill), on April 26, 2025 (by telephone), and on May 7 through 9, 2025 (in writing with a provider's note and in her appeal to Human Resources Administrator Whitcomb).

25

93.    Defendant took adverse action in the terms, conditions, and privileges of her employment: it terminated her effective April 30, 2025, one day after Administrator Caudill viewed her written request; it refused to rescind the termination when she appealed on May 8 and 9, 2025 with medical documentation in hand; and it designated her "DO NOT REHIRE."

94.    Defendant took these actions on account of her accommodation requests. The sequence is direct: request viewed at 10:44 A.M. on April 29; termination effective April 30; reason given, the absences the requests addressed. Defendant's later false statement to the EEOC that it first learned of the pregnancy on May 7, 2025 evidences its awareness that the true sequence is incriminating.

95.    By this conduct, Defendant violated 42 U.S.C. § 2000gg-1(5).

96.    As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

97.    Defendant acted with malice or reckless indifference to Ms. Williams' federally protected rights, entitling her to punitive damages.

98.    Ms. Williams is entitled to recover her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 2000gg-2(a)(1), which incorporates the remedies and procedures of 42 U.S.C. § 2000e-5(k).

## COUNT IV
## 42 U.S.C. §§ 2000gg-2(f)(1)
## Pregnant Workers Fairness Act – Retaliation

99.    Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

100.    Ms. Williams engaged in protected activity under the PWFA: she requested accommodations on April 24 and April 26, 2025; she renewed her requests with medical documentation on May 7, 2025; and she opposed Defendant's treatment of her on May 8 and 9, 2025, telling Ms. Whitcomb that her absences were pregnancy-related, that she had reported each one to the on-call supervisor in advance, and that new medication would permit her return by May 12, 2025.

101.    Defendant took materially adverse actions because of that protected activity: termination effective April 30, 2025, announced May 8, 2025; refusal to rescind on appeal; and the "DO NOT REHIRE" designation.

102.    Causation is shown by timing and pretext. One day separated Administrator Caudill's viewing of the written request from the effective termination date, and one morning separated Ms. Williams' May 7 documentation from Defendant's May 8 announcement. Defendant skipped the Second and Final Written Warnings its own policy required, relied on an absence count below its own twelve-absence termination threshold, and misstated to the EEOC when it first learned of the pregnancy.

27

103. By this conduct, Defendant violated 42 U.S.C. § 2000gg-2(f)(1).

104. As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

105. Defendant acted with malice or reckless indifference to Ms. Williams' federally protected rights, entitling her to punitive damages.

106. Ms. Williams is entitled to recover her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 2000gg-2(a)(1), which incorporates the remedies and procedures of 42 U.S.C. § 2000e-5(k).

## COUNT V
### 42 U.S.C. §§ 2000gg-2(f)(2)
### Pregnant Workers Fairness Act – Interference

107. Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

108. Ms. Williams exercised rights granted and protected by the PWFA: the right to communicate a pregnancy-related limitation to her employer and the right to request reasonable accommodation without adverse consequence. She exercised those rights on April 24, April 26, and May 7 through 9, 2025.

109. Defendant interfered with the exercise and enjoyment of those rights: it terminated her upon receipt of her requests; it disregarded the May 7 provider's note rather than consider it; it announced the termination as a fait accompli on May 8; and it imposed a "DO NOT REHIRE" bar reaching, upon

28

information and belief, Defendant's entire affiliated network. This conduct would deter a reasonable employee from exercising PWFA rights.

110. By this conduct, Defendant violated 42 U.S.C. § 2000gg-2(f)(2).

111. As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

112. Defendant acted with malice or reckless indifference to Ms. Williams' federally protected rights, entitling her to punitive damages.

113. Ms. Williams is entitled to recover her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 2000gg-2(a)(1), which incorporates the remedies and procedures of 42 U.S.C. § 2000e-5(k).

## COUNT VI
### 42 U.S.C. § 2000e-2(a)
### Title VII – Discriminatory Discharge on the Basis of Pregnancy and Sex

114. Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

115. Ms. Williams was a member of a protected class: a pregnant woman. Under 42 U.S.C. § 2000e(k), discrimination on the basis of pregnancy is discrimination because of sex. Defendant knew of the pregnancy before the termination took effect: Ms. Williams disclosed it to Defendant's on-call supervisor by telephone no later than April 26, 2025, and Administrator

29

Caudill viewed her written request for reduced hours on April 29, 2025, the day before the termination became effective.

116. Ms. Williams was qualified for her position. She was a certified nursing assistant and the only discipline of her employment was a single First Written Warning issued November 1, 2024.

117. Defendant discharged her effective April 30, 2025 and designated her "DO NOT REHIRE."

118. The circumstances give rise to an inference of pregnancy and sex discrimination: the discharge came four days after her pregnancy disclosure and one day after Caudill viewed her request; Defendant bypassed the Second and Final Written Warnings its progressive discipline policy required and terminated her with at most ten countable absences against a twelve-absence threshold; Defendant never enforced its punctuality rules against her or required medical certification as its policy allowed; and Defendant's own records contradict each other on the April 9 absence and on the termination date.

119. Defendant's stated reason is pretextual. Defendant told the EEOC it first learned of the pregnancy on May 7, 2025, a statement refuted by its own records, and it recorded her as "No Call/No Show" for shifts she had called off in advance through the channel Defendant designated.

120. By this conduct, Defendant violated 42 U.S.C. § 2000e-2(a).

121. As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

122. Defendant acted with malice or reckless indifference to Ms. Williams' federally protected rights, entitling her to punitive damages.

123. Ms. Williams is entitled to recover her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 2000e-5(k).

**COUNT VII**
**42 U.S.C. §§ 2000e(k), 2000e-2(a)**
**Title VII – Disparate Treatment**

124. Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

125. Ms. Williams, a pregnant woman, requested accommodations for her pregnancy-related condition on April 24, April 26, and May 7, 2025: a part-time or PRN schedule, a brief unscheduled period, and a short documented leave ending May 12, 2025.

126. Defendant refused. It never responded to any request and terminated her instead.

127. Under 42 U.S.C. § 2000e(k), women affected by pregnancy must be treated the same as other persons not so affected but similar in their ability or inability to work.

31

128. Upon information and belief, Defendant treated non-pregnant employees who were similar in their ability or inability to work more favorably: it excused their absences, accepted their medical documentation, and adjusted their schedules when temporary medical conditions kept them from scheduled shifts. Defendant's own attendance policy contemplates exactly that practice by authorizing medical certification for absences, yet Defendant never invoked that procedure with Ms. Williams; it discharged her instead.

129. Defendant's refusal imposed a significant burden on Ms. Williams, who lost her employment and her eligibility for rehire across Defendant's network while pregnant, and Defendant's justification is not sufficiently strong to warrant that burden, because the affected shifts were already covered and Defendant identified no cost or operational impediment. These circumstances give rise to an inference of intentional discrimination.

130. By this conduct, Defendant violated 42 U.S.C. §§ 2000e(k) and 2000e-2(a).

131. As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

132. Defendant acted with malice or reckless indifference to Ms. Williams' federally protected rights, entitling her to punitive damages.

133. Ms. Williams is entitled to recover her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 2000e-5(k).

### COUNT VIII
### 42 U.S.C. § 2000e-3(a)
### Title VII – Retaliation

134. Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

135. Ms. Williams engaged in statutorily protected activity: she requested accommodation for her pregnancy-related condition on April 24 and 26, 2025; she provided medical documentation of that condition on May 7, 2025; and on May 8 and 9, 2025 she opposed what she reasonably and in good faith believed to be pregnancy discrimination, telling Ms. Whitcomb that her absences were pregnancy-related, properly reported in advance, and about to be resolved by new medication permitting a May 12 return.

136. Defendant took materially adverse actions that would dissuade a reasonable employee from engaging in protected activity: termination effective April 30, 2025, announced May 8; refusal to rescind on appeal; and the "DO NOT REHIRE" designation.

137. The protected activity and the adverse actions are causally connected: one day separated Administrator Caudill's viewing of the accommodation request from the effective termination date, and Defendant confirmed the termination the morning after receiving her medical

33

documentation. Defendant's deviation from its own progressive discipline policy and its false statement to the EEOC about when it learned of the pregnancy further establish the connection.

138. By this conduct, Defendant violated 42 U.S.C. § 2000e-3(a).

139. As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

140. Defendant acted with malice or reckless indifference to Ms. Williams' federally protected rights, entitling her to punitive damages.

141. Ms. Williams is entitled to recover her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT IX
### 42 U.S.C. §§ 12112(a)
### ADA – Discriminatory Discharge

142. Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

143. Ms. Williams was an individual with a disability under 42 U.S.C. § 12102. Her severe pregnancy-related nausea and vomiting was a physical impairment that substantially limited major life activities, including eating, sleeping, and working, and the operation of major bodily functions, including her digestive and gastrointestinal functions. The impairment was disabling

34

even if episodic, 42 U.S.C. § 12102(4)(D), and the definition of disability is construed broadly, 42 U.S.C. § 12102(4)(A).

144. In the alternative, Ms. Williams had a record of such an impairment, documented in the May 7, 2025 note from her Lakeland Regional Health provider, and Defendant regarded her as having such an impairment when it discharged her for the absences the impairment caused. The impairment was neither transitory nor minor: it required prescription management and was expected to persist absent treatment.

145. Ms. Williams was a qualified individual under 42 U.S.C. § 12111(8). She performed the essential functions of her CNA position through her last worked shift and could have continued to perform them with the modest accommodations she requested.

146. Defendant discharged her effective April 30, 2025 and designated her "DO NOT REHIRE" because of her disability, her record of disability, and/or its perception of her as disabled. Ms. Whitcomb told her on May 8, 2025 that she was terminated for the very absences her impairment caused, and the termination followed one day after Administrator Caudill viewed her accommodation request.

147. Defendant's stated reason is pretextual for the reasons alleged above, including its departure from its own progressive discipline schedule and its false statement to the EEOC about when it learned of her condition.

35

148.    By this conduct, Defendant violated 42 U.S.C. § 12112(a).

149.    As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

150.    Defendant acted with malice or reckless indifference to Ms. Williams' federally protected rights, entitling her to punitive damages.

151.    Ms. Williams is entitled to recover her reasonable attorneys' fees, including litigation expenses and costs, pursuant to 42 U.S.C. § 12205.

## COUNT X
### 42 U.S.C. §§ 12112(b)(5)(A)
### ADA – Failure to Provide Reasonable Accommodation

152.    Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

153.    Ms. Williams was an individual with a disability under 42 U.S.C. § 12102. Her severe pregnancy-related nausea and vomiting was a physical impairment that substantially limited major life activities, including eating, sleeping, and working, and the operation of major bodily functions, including her digestive and gastrointestinal functions. The impairment was disabling even if episodic, 42 U.S.C. § 12102(4)(D), and the definition of disability is construed broadly, 42 U.S.C. § 12102(4)(A).

154.    Defendant had actual knowledge of the disability and the need for accommodation through her April 26, 2025 call to its on-call supervisor, her

April 24, 2025 written message to Administrator Caudill, and her May 7, 2025 text message and email to Ms. Whitcomb attaching her provider's note.

155.   Ms. Williams requested reasonable accommodations: a part-time or PRN schedule, a modified schedule dropping Mondays, and a brief, definite leave with a fixed return date of May 12, 2025, supported by medical documentation. Each was reasonable on its face, and none imposed undue hardship. Upon information and belief, Defendant had already covered the affected shifts and staffs with part-time and PRN CNAs in the ordinary course.

156.   Defendant provided nothing. It never responded, never engaged in the interactive process in good faith, and terminated her employment effective one day after its Administrator viewed her written request.

157.   By this conduct, Defendant violated 42 U.S.C. § 12112(b)(5)(A).

158.   As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

159.   Defendant acted with malice or reckless indifference to Ms. Williams' federally protected rights, entitling her to punitive damages.

160.   Ms. Williams is entitled to recover her reasonable attorneys' fees, including litigation expenses and costs, pursuant to 42 U.S.C. § 12205.

**COUNT XI**
**42 U.S.C. § 12203(a)**
**ADA – Retaliation**

161. Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

162. Ms. Williams engaged in activity protected by the ADA. She requested reasonable accommodation for her disability on April 24, 2025, in writing to Administrator Caudill, on April 26, 2025, by telephone to Defendant's on-call supervisor, and on May 7, 2025, in writing to Human Resources Administrator Whitcomb with her provider's note.

163. She further opposed Defendant's failure to accommodate her on May 8 and 9, 2025, telling Ms. Whitcomb that her absences were caused by her medical condition, that she had reported each one in advance through Defendant's designated on-call line, and that new medication would permit her return by May 12, 2025.

164. Defendant took materially adverse actions because of that protected activity: termination effective April 30, 2025, announced May 8, 2025; refusal to rescind the termination on her appeal; and the "DO NOT REHIRE" directive on its May 1, 2025 Termination Form.

165. Causation is established by timing and pretext: one day separated Administrator Caudill's 10:44 A.M. April 29, 2025 viewing of the written accommodation request from the effective termination date; Defendant

38

announced the termination the morning after her medical documentation arrived; Defendant skipped the Second and Final Written Warnings its own policy required; and Defendant falsely told the EEOC that it first learned of her condition on May 7, 2025.

166. By this conduct, Defendant violated 42 U.S.C. § 12203(a).

167. As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

168. Ms. Williams is entitled to recover her reasonable attorneys' fees, including litigation expenses and costs, pursuant to 42 U.S.C. § 12205.

### COUNT XII
### 42 U.S.C. § 12203(b)
### ADA – Interference

169. Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

170. Ms. Williams exercised rights granted and protected by the ADA: the right to disclose a disability to her employer and the right to request reasonable accommodation. She exercised those rights on April 24, April 26, and May 7 through 9, 2025.

171. Defendant interfered with the exercise and enjoyment of those rights: it terminated her employment effective April 30, 2025, one day after Administrator Caudill viewed her written request; it disregarded the May 7,

2025 provider's note rather than consider it; it announced the termination as a fait accompli on May 8, 2025; and it imposed a "DO NOT REHIRE" bar reaching, upon information and belief, Defendant's entire affiliated network. This conduct would deter a reasonable employee from asserting ADA rights.

172.  By this conduct, Defendant violated 42 U.S.C. § 12203(b).

173.  As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

174.  Ms. Williams is entitled to recover her reasonable attorneys' fees, including litigation expenses and costs, pursuant to 42 U.S.C. § 12205.

**COUNT XIII**
**Fla. Stat. § 760.10(1)(a)**
**FCRA – Discriminatory Discharge on the Basis of Pregnancy and Sex**

175.  Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

176.  The FCRA expressly prohibits discharging or otherwise discriminating against any individual because of sex or pregnancy, Fla. Stat. § 760.10(1)(a), and is construed in conformity with Title VII.

177.  Ms. Williams was a pregnant woman. Defendant knew of the pregnancy before the termination took effect: Ms. Williams disclosed it to Defendant's on-call supervisor by telephone no later than April 26, 2025, and

Administrator Caudill viewed her written request for reduced hours on April 29, 2025, the day before the termination became effective.

178. Ms. Williams was qualified for her position. She was a certified nursing assistant, she worked ten full overnight shifts in April 2025 alone, and the only discipline of her employment was a single First Written Warning issued November 1, 2024.

179. Defendant discharged her effective April 30, 2025 and designated her "DO NOT REHIRE."

180. The circumstances give rise to an inference of pregnancy and sex discrimination: the discharge came four days after her pregnancy disclosure and one day after Ms. Caudill viewed her request; Defendant bypassed the Second and Final Written Warnings its progressive discipline policy required and terminated her with at most ten countable absences against a twelve-absence threshold; Defendant never enforced its punctuality rules against her or required medical certification as its policy allowed; and Defendant's own records contradict each other on the claimed April 9, 2025 absence and on the termination date, April 30 versus May 1, 2025.

181. Defendant's stated reason is pretextual. Defendant told the EEOC it first learned of the pregnancy on May 7, 2025, a statement refuted by its own records, and it recorded her as "No Call/No Show" for shifts she had called off in advance through the channel Defendant designated.

182.   By this conduct, Defendant violated Fla. Stat. § 760.10(1)(a).

183.   As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

184.   Defendant's conduct was willful, wanton, and in reckless disregard of Ms. Williams' rights, entitling her to punitive damages under Fla. Stat. § 760.11(5).

185.   Ms. Williams is entitled to recover her reasonable attorneys' fees and costs pursuant to Fla. Stat. § 760.11(5).

## COUNT XIV
### Fla. Stat. § 760.10(1)(a)
### FCRA – Disparate Treatment

186.   Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

187.   Ms. Williams, a pregnant woman, requested accommodations for her pregnancy-related condition: on April 24, 2025, a reduction to part-time or PRN status keeping her existing schedule but dropping Mondays; on April 26, 2025, a brief unscheduled period until her May 7 obstetric appointment; and on May 7, 2025, a medically documented excusal through May 12, 2025.

188.   Defendant refused. It never responded to any request and terminated her instead, effective one day after Administrator Caudill viewed her written request.

189. Upon information and belief, Defendant treated non-pregnant employees who were similar to Ms. Williams in their ability or inability to work more favorably: it excused their absences, accepted their medical documentation, and adjusted their schedules when temporary medical conditions kept them from scheduled shifts. Defendant's own attendance policy contemplates exactly that practice by authorizing medical certification for absences, yet Defendant never invoked that procedure with Ms. Williams, and when she supplied certification unprompted on May 7, 2025, Defendant refused to consider it.

190. Defendant's refusal imposed a significant burden on Ms. Williams, who lost her employment and her rehire eligibility across Defendant's affiliated network while pregnant, and Defendant's justification is not sufficiently strong to warrant that burden, because the affected shifts were already covered and Defendant identified no cost or operational impediment. These circumstances give rise to an inference of intentional discrimination.

191. The FCRA is construed in conformity with Title VII, as amended by the Pregnancy Discrimination Act. By this conduct, Defendant violated Fla. Stat. § 760.10(1)(a).

192. As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

43

193.   Defendant's conduct was willful, wanton, and in reckless disregard of Ms. Williams' rights, entitling her to punitive damages under Fla. Stat. § 760.11(5).

194.   Ms. Williams is entitled to recover her reasonable attorneys' fees and costs pursuant to Fla. Stat. § 760.11(5).

### COUNT XV
### Fla. Stat. § 760.10(1)(a)
### FCRA – Discriminatory Discharge on the Basis of Handicap/Disability

195.   Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

196.   Ms. Williams had a handicap within the meaning of the FCRA, which is construed in conformity with the ADA as amended: severe pregnancy-related nausea and vomiting, a physical impairment that substantially limited major life activities including eating, sleeping, and working, and the operation of her digestive and gastrointestinal functions. The impairment qualifies even if episodic, because it substantially limited major life activities when active.

197.   In the alternative, Ms. Williams had a record of that impairment, documented in the May 7, 2025 note from her Lakeland Regional Health provider, and Defendant regarded her as impaired when it discharged her for the absences the impairment caused. The impairment was neither transitory nor minor: it required prescription management.

44

198.  Ms. Williams was qualified to perform the essential functions of her CNA position and could have continued to perform with the modest accommodations she requested.

199.  Defendant discharged her effective April 30, 2025 and designated her "DO NOT REHIRE" because of her handicap. Ms. Whitcomb told her on May 8, 2025 that she was terminated for the very absences her impairment caused, and the termination took effect one day after Administrator Caudill viewed her accommodation request.

200.  Defendant's stated reason is pretextual: Defendant skipped the Second and Final Written Warnings its progressive discipline policy required, terminated her with at most ten countable absences against a twelve-absence threshold, misstated to the EEOC when it first learned of her condition, and produced internal records that contradict each other on the claimed April 9, 2025 absence and on the termination date.

201.  By this conduct, Defendant violated Fla. Stat. § 760.10(1)(a).

202.  As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

203.  Defendant's conduct was willful, wanton, and in reckless disregard of Ms. Williams' rights, entitling her to punitive damages under Fla. Stat. § 760.11(5).

204.    Ms. Williams is entitled to recover her reasonable attorneys' fees and costs pursuant to Fla. Stat. § 760.11(5).

## COUNT XVI
### Fla. Stat. § 760.10(1)(a)
### FCRA – Failure to Provide Reasonable Accommodation for Handicap/Disability

205.    Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

206.    Ms. Williams had a handicap, severe pregnancy-related nausea and vomiting that substantially limited major life activities including eating and the operation of her digestive and gastrointestinal functions, and she was qualified: she performed the essential functions of her CNA position and could have continued to perform them with reasonable accommodation.

207.    Defendant had actual knowledge of the handicap and the need for accommodation through her April 26, 2025 call to its on-call supervisor, her April 24, 2025 written message to Administrator Caudill, and her May 7, 2025 text message and email to Ms. Whitcomb attaching her provider's note.

208.    Ms. Williams requested reasonable accommodations: a part-time or PRN schedule, a modified schedule dropping Mondays, and a brief, definite leave with a fixed return date of May 12, 2025, supported by medical documentation. Each was reasonable on its face, and none imposed undue hardship; upon information and belief, Defendant had already covered the

46

affected shifts and staffs the Facility with part-time and PRN CNAs in the ordinary course.

209. Defendant provided nothing. It never responded to any request, never engaged in any interactive process, and terminated her employment effective one day after its Administrator viewed her written request.

210. By this conduct, Defendant violated Fla. Stat. § 760.10(1)(a).

211. As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

212. Defendant's conduct was willful, wanton, and in reckless disregard of Ms. Williams' rights, entitling her to punitive damages under Fla. Stat. § 760.11(5).

213. Ms. Williams is entitled to recover her reasonable attorneys' fees and costs pursuant to Fla. Stat. § 760.11(5).

**COUNT XVII**
**Fla. Stat. § 760.10(7)**
**FCRA – Retaliation**

214. Plaintiff reincorporates the factual allegations in Paragraphs 1 through 68 as if fully set forth herein.

215. Ms. Williams opposed practices made unlawful by the FCRA and asserted her rights under it. She requested accommodation for her pregnancy-related condition and handicap on April 24, 2025, in writing to Administrator

Caudill, on April 26, 2025, by telephone to Defendant's on-call supervisor, and on May 7, 2025, in writing to Human Resources Administrator Whitcomb with her provider's note.

216. On May 8 and 9, 2025, she opposed her termination as discriminatory, telling Ms. Whitcomb that her absences were pregnancy-related, that she had reported each one in advance through Defendant's designated on-call line, and that new medication would permit her return by May 12, 2025.

217. Defendant took materially adverse actions because of that protected activity: termination effective April 30, 2025, announced May 8, 2025; refusal to rescind the termination on her appeal; and the "DO NOT REHIRE" directive on its May 1, 2025 Termination Form.

218. The adverse actions are causally connected to the protected activity: one day separated Administrator Caudill's 10:44 A.M. April 29, 2025 viewing of her written request from the effective termination date; Defendant announced the termination the morning after her medical documentation arrived; Defendant skipped the Second and Final Written Warnings its own policy required and terminated her below its own twelve-absence threshold; and Defendant falsely told the EEOC it first learned of her pregnancy on May 7, 2025.

219. By this conduct, Defendant violated Fla. Stat. § 760.10(7).

220. As a direct and proximate result, Ms. Williams suffered and continues to suffer lost wages and benefits, emotional pain and mental anguish, humiliation, and loss of enjoyment of life.

221. Defendant's conduct was willful, wanton, and in reckless disregard of Ms. Williams' rights, entitling her to punitive damages under Fla. Stat. § 760.11(5).

222. Ms. Williams is entitled to recover her reasonable attorneys' fees and costs pursuant to Fla. Stat. § 760.11(5).

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursement of this action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation of federal, state, and local law.

Dated: July 30, 2026        **DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*


*/s/ Nicolas A. Yoda*
Nicolas A. Yoda, Esq.
Florida Bar No.: 1015597
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Nicolasy@dereksmithlaw.com